**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JIM ADEKOLA-KUNLE,

Petitioner,

v.

Case No. 2:26-cv-03362-MIS-DLM

WARDEN, in his Official Capacity as Warden, Otero County Processing Center; MARKWAYNE MULLIN, in his official capacity as Secretary, U.S. Department of Homeland Security; DAVID J. VENTURELLA, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; MARY DE ANDA-YBARRA, in her official capacity as Field Office Director, El Paso Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; and TODD BLANCHE, in his official capacity as Attorney General of the United States,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

THIS MATTER is before the Court on Petitioner Jim Adekola-Kunle's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1, filed October 7, 2026. The federal Respondents filed a Response on November 5, 2026.[1] ECF No. 8. Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Petition.

[1] The Clerk's Office served all Respondents with the Petition pursuant to this District's Standing Order Regarding Service of Process in Immigration Habeas Petitions filed Pursuant to 28 U.S.C. § 2241, Case 1:26-mc-00004, ECF No. 3 (D.N.M. Jan. 28, 2026). ECF No. 2. However, as has become customary in these cases, the Warden did not respond to the Petition.

## I. Background

Petitioner is a citizen of Benin who has lived in the United States since at least 2008. Resp. at 4. An Immigration Judge entered an Order of Removal on August 25, 2008, and Petitioner did not appeal. Pet. at 4; Executive Office for Immigration Review ("EOIR") Automated Case Information. The Order indicated Petitioner was to be removed to Mexico or in the alternative Benin. Decl. Fernando Reyes, ECF No. 8-1 at ¶ 8. Apparently, Petitioner was detained after the Order of Removal, for Respondents acknowledge he was released from custody on an Order of Supervision on January 23, 2009. Id. at ¶ 9. The Respondents provide no other information about Petitioner's detention 18 years ago or the Order of Supervision that ended it. See generally Resp.

Since his release, Petitioner lived peaceably and complied with the terms of the Order of Supervision. See generally Pet. Nevertheless, on June 1, 2026, Petitioner was taken into custody by U.S. Immigration and Customs Enforcement ("ICE") when he reported for a check-in. Pet. at 2. Respondents have not informed Petitioner of the reason for his detention or that they withdrew or revoked the Order of Supervision. See generally Pet. He has been in custody ever since and is currently detained at the Otero County Detention Center in Chaparral, New Mexico. Id.

On August 18, 2026, almost three months after detaining Petitioner, the Consulate of Benin interviewed Petitioner but could not determine his nationality so declined to repatriate him. Decl. Fernando Reyes, ECF No. 8-1 at ¶ 13. Subsequently, a Detention and Deportation Officer "(DDO") emailed the Removal and International Operations Third Country Nation ("TCN") Coordinator to determine whether Petitioner could be nominated for a TCN removal flight. Id. at ¶ 15. On October 12, 2026, the DDO informed Enforcement and Removal Operations ("ERO") that ERO would be notified when Petitioner was selected for a TCN flight. Id. at ¶ 16. Respondents provide no further evidence of any concrete effort to remove Petitioner. See generally Resp.

On October 29, 2026, the Court issued an Order to Answer and Enjoining Transfer instructing Respondents to show cause why the Court should not grant Petitioner habeas relief. ECF No. 6. The Court specifically ordered Respondents "specify whether the Court has already ruled on the legal issue(s) in this case. In addition, the USAO's answer must specify the basis for Petitioner's current detention, including a statement clarifying whether Petitioner was released subject to an Order of Supervision under 8 U.S.C. Sec. 1231(a)(3) or other statutory basis and if Petitioner was so released whether the revocation of that Order was consistent with 8 C.F.R. Sec. 241.4(a) and 241.4(l)(2). Finally, the USAO's answer must specify whether the holding in Zadvydas v. Davis, 533 U.S. 678 (2001) requires (or will shortly require) relief." Id.

## II. Legal Standard

Federal courts possess authority to review the legality of executive detention through the writ of habeas corpus. Title 28, United States Code, section 2241 expressly authorizes courts to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Tenth Circuit has recognized that "[c]hallenges to immigration detention are properly brought directly through habeas." Soberanes v. Comfort, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001)). "The fundamental purpose of a § 2241 habeas proceeding is to allow a person in custody to attack the legality of that custody, and the traditional function of the writ is to secure release from illegal custody." Palma-Salazar v. Davis, 677 F.3d 1031, 1035 (10th Cir. 2012) (quotation marks omitted) (quoting McIntosh v. U.S. Parole Comm'n, 115 F.3d 809, 811 (10th Cir. 1997)).

## III. Discussion

Petitioner argues that his detention violates his Fifth Amendment due process rights because it is unreasonably prolonged and because his Order of Supervision was revoked without an opportunity for him to be heard. Pet. at 6-7. Respondents argue that Petitioner's Zadvydas claim is not yet ripe because he has not been detained for more than 6 months, though they address neither the effect of his detention in 2008-2009 nor the Court's instruction to address whether Zadvydas would soon require Petitioner's release. Resp. at 5-6. Respondents also assert briefly that because Petitioner is detained pursuant to § 1231, he is not eligible for a bond hearing. Id. at 5. Finally, Respondents also assert that even if Petitioner's Zadvydas claim is ripe, he has not provided good reason to believe that his removal will not be accomplished in the reasonably foreseeable future. Id. at 5. However, Respondents largely fail to respond to the substance of Petitioner's assertion – that his Order of Supervision was revoked without an opportunity to be heard – and the Court's Order to show cause, directing them to provide details about the nature of the Order of Supervision – where Petitioner was released from detention under § 1231 in January 2009 – and what process was utilized to revoke that Order. See generally Resp.

When an order of removal becomes administratively final, as has happened in this case, the authority to detain a noncitizen shifts to 8 U.S.C. § 1231(a). See Tairab v. Noem, No. 26-cv-0450-JB-KRS, 2026 WL 2111474, at *1 (D.N.M. July 22, 2026). The Government is expected to secure a noncitizen's removal within 90 days after issuing the removal order. Zadvydas, 533 U.S. at 682; see also 8 U.S.C. § 1231(a)(1). "[D]uring the 90-day removal period, ... [the noncitizen] must be held in custody." Zadvydas, 533 U.S. at 683 (citing 8 U.S.C. § 1231(a)(2)). After that, the Government may continue detaining the noncitizen only for as long as is "reasonably necessary" to secure their removal. Id. at 683, 689; see 8 U.S.C. § 1231(a)(6). However, the statute implicitly

"limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. In Zadvydas, the Supreme Court established a presumptively reasonable six-month period of detention. Id. at 701. After that period, if the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.; see also Clark v. Martinez, 543 U.S. 371, 377-78 (2005).

The Court first addresses the duration of Petitioner's detention. Petitioner has been detained at least twice since his final order of removal: (1) initially he was detained for an unspecified period of time between August 25, 2008, and January 23, 2009, when it is undisputed that Petitioner was released from detention under an Order of Supervision; (2) more than 17 years later, he was detained on June 1, 2006 and has been detained since.

Although Respondents are correct that Petitioner's current detention is (slightly) less than 6 months, they entirely ignore that Petitioner was previously detained when his removal order became final in 2008. Multiple district courts around the country have held that the clock does not "start over" for purposes of Zadvydas if a person is re-detained. Jimenez Chacon v. Lyons, 811 F. Supp. 3d 1299, 1309 (D.N.M. 2025) (collecting cases and noting some district courts have held otherwise). A series of releases and re-detentions in essence results in an indefinite period of detention, even where the periods of detention are separated by years. Id. Although it is not entirely clear whether Petitioner was detained from September 24, 2008 (when his removal order became administratively final) and January 23, 2009, his current detention as of the date of this order is but 12 days shy of six months. Moreover, Respondents provide no information in response to the Order to Show Cause, directing them to clarify the terms of the Order of Supervision under which

Petitioner was released from detention 17-plus years ago, and the Court therefore finds Respondents have waived any argument that Petitioners initial detention was for a period anything less than the 90-day removal period, during which detention is required. See C1.G on behalf of C.G. v. Siegfried, 38 F.4th 1270, 1282 (10th Cir. 2022). The Court therefore finds that Respondents have detained Petitioner longer than the presumptively reasonably 6-month period: three months after his 2008 Final Order of Removal and over five-and-a-half months currently.

Respondents next assert that Petitioner has not shown good reason to believe that removal is not significantly likely in the reasonably foreseeable future. The Court rejects this argument. First, Petitioner's removal order became final over 18 years ago and he has been reporting to immigration officials during that time. Notably, nothing indicates that immigration officials informed Petitioner of any concrete travel plans or provided travel documents during those 18 years. In addition, the record shows that after Petitioner was detained on or about June 1, 2026, Respondents attempted and failed to remove him to Benin, his country of origin. Decl. Fernando Reyes, ECF No. 8-1 at ¶ 13. Respondents now hope to remove him to a third country but provide no concrete information about the likely timeframe of that process – indeed it took approximately 6 weeks, from August 18 when the removal effort to Benin failed to October 12, just for Respondents to accomplish putting Petitioner on a TCN flight list. Decl. Fernando Reyes, ECF No. 8-1 at ¶ 16. Finally, Petitioner was released on an Order of Supervision in 2009, perhaps because the government determined at that time his removal in the reasonably foreseeable future was unlikely, though as noted before, Respondents declined to provide information about that Order. See Mendez v. U.S Immigr. & Customs Enf't, No. 1:26-CV-01448-MIS-DLM, 2026 WL 1453487, at *2 (D.N.M. May 22, 2026) (relying on release on Order of Supervision to find that removal in the foreseeable future was unlikely where removal did not occur in the ten years after

the Order of Supervision). The Court finds that the absence of any efforts to remove Petitioner for 18 years, a recent failed attempt to remove him to his country of origin through no fault of Petitioner, the laborious rate at which Respondents sought alternative removal plans after removal efforts to Benin failed, and Petitioner's release on an Order of Supervision, collectively, provide good reason to believe that removal in the reasonably foreseeable future is unlikely.

Because Respondents do not fully address Petitioner's arguments or respond to the Court's Order, they do not make any argument or present any evidence that removal in the reasonably foreseeable future is likely. Indeed, the only information they provide regarding current removal efforts is that they have nominated him for a TCN flight, though they provide no information on when this process may conclude. Decl. Fernando Reyes, ECF No. 8-1 at ¶¶ 15-16.

Accordingly, the Court finds that the presumptively reasonable six-month-period of confinement has expired, Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and the Government has failed to present any evidence to rebut that showing. See generally ECF No. 8. As such, the Court further finds that Petitioner's continued, indefinite detention violates the Immigration and Nationality Act, Zadvydas, 533 U.S. at 699, and the Fifth Amendment's Due Process Clause, Mardanpour v. Warden, Case No. 2:26-cv-00550-MIS-LF, 2026 WL 963164, at *3-8 (D.N.M. Apr. 9, 2026). Therefore, he is entitled to immediate release subject to appropriate conditions of supervision under 8 U.S.C. § 1231(a)(3).

In addition, Petitioner argues that after his initial detention during the removal period he was released under an Order of Supervision and Respondents have provided him with no information or process regarding their decision to revoke that release. See generally Pet.; Decl. Fernando Reyes, ECF No. 8-1 at ¶ 9. Respondents fail entirely to respond to Petitioner's argument

that they revoked his Order of Supervision without the process required by the INA.[2] "Where, as here, 'a party files a response to a motion but does not address all arguments which the motion raises, the party has effectively conceded the arguments which it does not address.'" Alfaro Herrera v. Baltazar, Civil Action No. 1:25-cv-04014-CNS, 2026 WL 91470, at *5 (D. Colo. Jan. 13, 2026) (quoting Series 17-03-615 v. Teva Pharms. USA, Inc., 785 F. Supp. 3d 904, 935 (D. Kan. 2025)); see also C1.G on behalf of C.G. v. Siegfried, 38 F.4th 1270, 1282 (10th Cir. 2022) (holding that the district court correctly dismissed plaintiff's facial challenge as "abandoned" where plaintiff failed to include that challenge in his response to arguments raised in defendant's motion to dismiss). The Court therefore finds that Respondents' non-opposition to the Petition and the Court's Order to Show Cause constitutes a concession that their revocation of Petitioner's release on an Order of Supervision violates the INA.

The regulatory framework governing the release of noncitizens subject to § 1231(a)(6) is set forth in 8 C.F.R. § 241. It is not clear whether Petitioner was released in 2009 because the Government determined he was not a flight risk or danger to the community, as described in 8 C.F.R. § 241.4(e), or because it determined that there was no significant likelihood of removal in the reasonably foreseeable future, as set forth in 8 C.F.R. § 241.13. Respondents simply do not provide any information about the Order of Supervision, despite the Court's instruction that they do so. See generally Resp. However, both § 241.4 and § 241.13 provide mechanisms for the Government to revoke an Order of Supervision where a noncitizen has been released after a final order of removal. See Abedi v. Carter, No. 25-3179, __ F.4th __, 2026 WL 3149141, at *15-19

[2] Respondents appear to misconstrue this argument as an argument by Petitioner for a bond hearing under 8 U.S.C. § 1226. Notably, the Petition does not reference § 1226 or a bond hearing but instead references his release on an Order of Supervision and discusses notice and an opportunity to be heard, such as an interview or formal process. See generally Pet.

(10th Cir. Oct. 21, 2026) (discussing procedural mechanisms for the revocation of release under § 241.4. and § 241.13). Whatever decision Respondents made to detain Petitioner on or about June 1, 2026, they offer no evidence that they followed any process whatsoever to revoke Petitioner's release on an Order of Supervision.[3] See generally Resp. Indeed, Petitioner asserts he has not been provided with any reason for such revocation. See generally Pet. The Court can only conclude, given Respondents failure to respond to this argument, that they did not follow the rules set forth in § 241.4 or § 241.13, whichever would be applicable, when they detained Petitioner, and that provides another basis to grant Petitioner habeas relief. See Abedi, 2026 WL 3149141, at *21-25.

Therefore, it is **HEREBY ORDERED** that:

1. The Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**;

2. Respondents are **ORDERED** to immediately release Petitioner Jim Adekola-Kunle from custody/detention, subject to reasonable conditions of supervision under 8 U.S.C. § 1231(a)(3) no more onerous than those in the 2009 Order of Supervision;

3. Respondents shall return all of Petitioner's seized property to Petitioner;

4. Respondents **SHALL NOT** re-detain Petitioner absent (1) evidence that Petitioner has violated the conditions of his Order of Supervision, or (2) concrete travel plans to remove Petitioner from the United States; and

[3] Respondents do not assert that they withdrew the Release consistent with §241.13(h)(4) because Petitioner's removal was to occur in the reasonably foreseeable future; nor do they provide evidence that they informed Petitioner that they had done so. See generally Resp. Indeed, such an assertion would be disingenuous at best given that they have not been able to remove Petitioner in just shy of 6 months.

5. The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter to ensure compliance with this Order.

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE